**UNITED STATES of America,**
**Plaintiff,**

v.

**John Baldwin SCOTT, also known as Jack Scott, and Marciano Padua,**
**Defendants.**

**No. 23551.**

United States District Court, S. D. California, S. D.

Sept. 27, 1954.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Edwin C. Jeffries, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Thomas Whelan, San Diego, Cal., for defendant John Baldwin Scott.

Harold P. Lasher, San Diego, Cal., for defendant, Marciano Padua.

WIIG, District Judge.

The defendants, John Baldwin Scott and Marciano Padua, were indicted by the grand jury on January 14, 1954. Count 1 charged them with a violation of 18 U.S.C.A. § 371, in that they conspired to commit offenses against the United States of America and to defraud the United States of America. Counts 2 through 19 of the indictment charged the defendant Scott with violations of 18 U.S.C.A. § 1422, which section provides in part as follows:

> "Whoever knowingly demands, charges, solicits, collects, or receives, or agrees to charge, solicit, collect, or receive any other or additional fees or moneys in proceedings relating to naturalization or citizenship or the registry of aliens beyond

the fees and moneys authorized by law, * * *."

shall be guilty of an offense. In Count 7, the defendant Padua was charged with this offense as an aider and abettor under 18 U.S.C.A. § 2.

Scott had been a Naturalization Examiner in San Diego for many years. As such, it was his official duty to examine aliens as to their qualifications for American citizenship and, after conducting such examinations, to recommend the granting or denial of citizenship as to each petitioner. He was on the eve of retirement after nearly thirty-six years of service with the United States Government. Padua was a local barber with a wide acquaintance among aliens of Filipino extraction residing in California.

From the evidence adduced at the trial, it appeared that Scott and Padua had been working together for an unknown period of time, accepting sums of money from Filipino aliens desiring to acquire citizenship, were were unable to fulfill the needed legal requirements. Padua acted as solicitor, intermediary, and interpreter. The Filipino aliens came from various parts of the State of California in response to rumors that "it was easy to get American citizenship in San Diego." The trial of the defendants before a jury lasted eight weeks, due to the calling by the Government of a parade of witnesses who had been naturalized by the Superior Court upon the recommendation of Scott. The majority of them displayed a shocking degree of ignorance with respect to our form of government, our history, and the rights and duties of American citizens. Many could not understand or speak the English language, as a result of which it was necessary to take their testimony with the aid of interpreters. One of the witnesses who had been naturalized upon the recommendation of Scott was asked if he had a Communist Party card. He replied in the affirmative. Upon being requested to show it, he took from his pocket an envelope containing his Certificate of Naturalization. The witness did not intend to be humorous during this travesty; he simply was devoid of all knowledge concerning the United States.

Because of the insufficiency of the evidence as to Count 13 of the indictment, the court granted the motion for judgment of acquittal as to the defendant Scott. The jury, after extended and careful deliberation, returned verdicts of guilty as to the remaining counts of the indictment. The verdicts of the jury very properly condemned the defendants for their activities in defrauding the Superior Court and in selling our most priceless heritage for money.

Before sentencing the defendants, the court had the benefit of complete presentence reports prepared by the Probation Officer, and each defendant was given an opportunity to make a statement to the court. Their statements were supplemented by representations made by their respective counsel.

Padua was sentenced to serve two years in prison as to Counts 1 and 7, the sentences to run concurrently. No fine was imposed because he was sorely in debt. As to Count 1 of the indictment, Scott was sentenced to three years' imprisonment, and as to the remaining counts, one year as to each count, the sentences to run concurrently. No fine was imposed as to this defendant, because he likewise was sorely in debt and had in effect fined himself a sum estimated in the neighborhood of $50,000 to $100,000 because, by his conduct, he had forfeited and lost his retirement allowances.

Padua filed a motion and an amended motion to reduce the sentence in his case. The motions contained no matter which the court did not have at hand at the time of imposing sentence which would affect the court's discretion in imposing the sentence.

■ This court has been vested with wide discretion in assessing punishment within the limits of the various federal statutes. United States v. Rosenberg, 2 Cir., 195 F.2d 583; Becker v. United

States, 9 Cir., 91 F.2d 550. In sentencing Padua to two years on Count 7, while sentencing Scott to one year on this same count, the court believes it acted fairly because Scott was sentenced to serve three years on Count 1, his sentences to run concurrently. The final result is that Scott will serve three years while Padua will serve but two years. This was the result intended by the court.

In light of the nature of the crimes committed, both defendants have little to complain of, as the sentences pronounced are not as severe as they well could have been.

The motions are denied.